The next matter, number 25-1262, Alliance for Automotive Innovation v. Andrea Joy Campbell. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good morning, Your Honor. May it please the Court, Andrew Pincus for Appellant A.A.I. Good morning. You may begin. Do you wish to reserve time for review? I would like to reserve three minutes for rebuttal. Thank you. You may. Auto manufacturers employ cybersecurity protections to prevent unauthorized access to critical vehicle systems, those governing functions such as steering, braking, and airbag deployment.  Yes. Could you lift the mic a little? Sorry. And just to make sure that it picks it up. I can't project my voice either. Give it a try. I'll do better. The challenge in Massachusetts law provisions state that such access controls are permissible only if they are applied through standardized cross-manufacturer gateways, and those gateways may not be administered by auto manufacturers. Because no such gateways exist, the law's effect is to require manufacturers to disable the cybersecurity protections that restrict access to these systems. But the Federal Motor Vehicle Safety Act requires manufacturers to recall any vehicle with a safety defect and eliminating access controls for critical vehicle systems creates serious safety risks and therefore bars sales of vehicles that lack those controls. That's what NHTSA said in its June 2023 letter to auto manufacturers that complying with the Massachusetts law would conflict with your obligations under the Safety Act. Can I just ask a sort of preliminary clarifying question, which is, I don't read you to be challenging the District Court's conclusions about how we construct, construe the law. Your position is that even if you accept the District Court as the District Court reads this statute, it's still impossible for you to follow the data law and the MVSA. Exactly, Your Honor. Okay. So NHTSA gave that instruction to manufacturers in 2023. It has never withdrawn it. And for that reason and others, the Massachusetts law is preempted. Can you just aggregate the parts of the law for me? Two and three? Yes, because it would be, right, you could have three to be preempted and three not, right? So can you address them sort of in series instead of together? Sure. Both elements of the law have the critical problem, which is that authorization controls are impermissible unless they are applied through a cross-manufacturer platform or gateway that the auto manufacturers don't administer. And I think everyone agrees that both for Section 2, which is direct access into the car, Section 3 is remote over-the-air access, for neither does that platform exist. And so the requirement in both instances would be for manufacturers to disable those cybersecurity protections. So Section 2 requires a standard system across all makes and models that is where authorization is not administered by the manufacturer, right? Right. It doesn't preclude, so there's two separate things going on there. One is you have a problem with it being standardized across all makes and models, and that's because that waters down the difficulty of having to break into multiple different kinds of systems. Is that right? That's one problem. The sort of predicate problem is no such system exists, right? I guess that's a question I have. So if I accept that as true, and Judge Kasper talks about this, and I guess I was intrigued by this, does that mean you have a good defense today versus preemption? I mean, preemption is forever. There is an object conflict, and this law can't be enforced. As opposed to today, and for some period of time, maybe this law can't be enforced because enforcement or compliance is impossible now technologically, but does that mean it's preempted? I think it does, Your Honor. That's certainly what NHTSA found. I mean, what NHTSA said both in June 2020 That seems like a legal problem. So what is preemption? Preemption is two things that can't exist together. And today, there might be a problem in you complying with the law such that it would be wrong to fine you or otherwise penalize you, but does that mean that these two things can't exist together forever? It doesn't seem like that. I don't think preemption necessarily requires forever, Your Honor. I think there are plenty of instances where courts issue injunctions and changed circumstances mean that the injunction is modified or lifted, and I think that's exactly what the appropriate situation is here. For now, it is impossible. What would happen if one of these companies decided to really do the work and build this thing, and it existed, and then they hire a third-party entity, and they do the administration? Then all of a sudden, the law becomes unpreempted? I think the Attorney General could go back to the District Court and say that circumstances have changed, or NHTSA and the Attorney General could go back to court. That's basically what the exchange of letters in August says, right? NHTSA says in response to the Attorney General's letter, We think this is possible. It takes some work. It will take some time. We're willing to work with you. I think just stepping back, this was a ballot initiative. I think the problem is it doesn't have a mechanism for creating the systems that it requires, and that's a gap, and the auto manufacturers can't fill that gap because they can't create and administer the system. There has to be someone else. The Attorney General could have called. You merged two things there, create and administer. I agree they can't administer it. They'd have to hire Authorization, Inc. to do the administration, but I don't see the prohibition on them being involved in it being built. They can be involved in it, Your Honor, but I think the question is can they pick what administer is and what the parameters or involvement are are not clear under the statute, and so I think the question is if they pick the administrator, is that too much OEM involvement? We don't know the answer to that, but just to step back for a minute, what could have happened under the statute and what we asked in response to the August 23 exchange of letters, which is a meeting of the interested parties that the AG could have called to say let's all work together. Let's figure out if this proposal in the August 2023 letter works. Get the auto dealers, the independent service people, NHTSA, and the AG around the table, come up with a solution. We think that's what should happen now. The problem is the law doesn't have that mechanism, so the logical thing to us would be to say yes, right now it is preemptive because there is, for both Section 2 and Section 3, there is a clear conflict and there is clear impossibility, but it certainly wouldn't be out of bounds for the district court in entering that injunction to say I'm instructing these relevant parties to get together and report to me periodically about how they're doing and to essentially fill the gap that the statute creates to subject the manufacturers who are complying with federal law, as NHTSA says you may not comply under Section 3, to subject them to the litigation and the risk of penalties that would ensue depending on what happens in penalty actions under the Massachusetts law seems exactly what preemption is designed to prevent. So are you suggesting that even now you think there is a way to resolve this case by just sitting down outside of this room and talking through it? No, I don't think it could be done in a day. I think these are very complicated technical issues. There are two parts, right? As Your Honor said, there's Section 2 and Section 3, creating maybe that's the same gateway system, maybe it's different. We still have a problem in interpretation. The AG says the district court didn't address whether authentication and authorization could be separated and whether manufacturers could engage in authentication. That's the AG's position. The problem is authorization is critical. Authorization is what parts of the car system do you get access to? And so it's critically important that access be limited so that auto viewers or consumer, auto service people or consumers can't, for example, I recognize that problem. I think you make a very good point. But I'm a little unsure why we're limited to this computer access definition of authorization and why a more colloquial meaning doesn't work. A colloquial meaning means everything is off base for the manufacturer. So that's an even bigger problem because then we really need this system, this gateway has to control both authentication, who are you, and authorization, what do you get access to. So the colloquial definition, the one that the Supreme Court adopted in Van Buren, covers both of those things. And if neither of those things can be done without the system existing, that's an even bigger cybersecurity problem. So just to go back to your earlier question, I think what we're saying is essentially what NHTSA said in its letter, which is you propose something that may work, it's going to take some time to test it, to develop it and test it, and then the time for it to be installed in cars lets work. We then sent a letter in response to that, which is ECF 358, that said we'd like to be part of those conversations. We never heard back from the Attorney General or anyone else. I do think the sensible way for this case to be resolved is recognize that for both of these provisions, there is an impossibility right now, but that if the parties work together, it would be possible under the auspices of a court, it would be possible to put something together to fill what is essentially this gap in the statute. Let me ask you a few more questions. I will say, as you probably know, we do run a mediation program here, and if both parties reached out to the court and sort of explained their positions, we'd be open to that, I think. We would need these other people, right, who are not parties, though. We need the service folks. We need NHTSA. So at page 17 of the district court's opinion, the district court, and I may not be reading this correctly, but the district court finds that some OEMs allow access to onboard diagnostics with no authorization. And then right after that, the district court discusses a scan tool system involving a trade association called ETI that also doesn't involve manufacturer authorization. Do you challenge those factual findings? What are we to make of that? So just to clarify those findings a bit, what the district court found, this is the OBD system, which is the system that sort of plugs into the court. Yeah, so I'm in section 2. Right, this is in section 2. What the district court said is no access is needed to reach diagnostic codes. That's only part of what's necessary for repair, right? You get the codes, but then you have to do things to the systems in order to make the repair sometimes. And that second aspect is what's controlled, what is controlled by authorization. Authorization means like, all right, I know what's wrong with the brakes. Here are the messages I want to send to the computer to fix the brakes, and you want control to send those messages to the braking system through the computer, right? We want to be sure that only people who are authorized in the generic sense are because we don't think, and we want to make sure that they're limited to sending those. So Joe's Garage would have to, under what you're saying, get authorization to try to fix the brakes, right? And he wants to send messages to the computer to fix the brakes, and somebody has to approve them. Yes, and that's... And this law says, I think, you could have a booklet, it rules of authorization, who can be authorized, how they get authorization, what they can do, what they can't do, and the only thing is the person who's ultimately the judge of whether Joe's Garage can do it can't be the manufacturer. Well, and I think for cybersecurity purposes that judge has to have a system that is effective, A, in deciding that that person... If that could be built, there's no conflict. There's no preemption. If that could be built and be something that NHTSA said complied with the requirements of the safety, I guess, but that... You don't say it can't be built. We don't say it can't be built as long as what the statute... The statute does not require authorization to things that would create a safety defect. Let me give you an example. One of the things that dealers can do because there's an authorization control is update software on the car. Once you have a dealer, you know it's a dealer who's doing it and you know that the software is authorized because it's embedded. It's Toyota software for the Toyota car. That's fine. Consumers also have to have access. We certainly want to be sure that the authorization limits meant that a consumer couldn't download an update from a website and put it into the car and say, I'm updating my Toyota car. If there was a rule of the system that was designed in some third party's job as to say, are you trying to download software that can't be authorized under the rules that have been created, that would be acceptable under this law, right? I think if the controls were sufficient... The one other issue that I think NHTSA hasn't addressed because it hasn't had to is will those authorization controls be the same for every car or will manufacturers be able to have a separate authorization algorithm for their cars so that getting authorization maybe through hacking to one manufacturer doesn't allow authorization to others. So a question that hasn't been addressed is how do you design the system? Do you say, yes, it's one system but it has subparts so if you're trying to do something on a GM car, GM authorization controls administered by this third party can work. We just don't know whether that's permissible. So, I mean, unfortunately it's complicated and subjecting manufacturers to lawsuits and liability. The liability here, by the way, is up to $10,000 per denial of access. So we're talking about a considerable amount of potential liability in lawsuits while this is going on. Has that been threatened? Well, the case has sort of been on hold. For a large portion of what the time the case was in the district court, the Attorney General stipulated no enforcement. There's private enforcement also. Was it threatened before that? I don't think anyone has threatened it but it is certainly a risk that we face. I think what people have done is they're waiting for the outcome of this case to see what happens. I think if the outcome of this case happened... Is that a letter from the Attorney General? I mean, couldn't you, you know, threatening enforcement, seek some kind of declaratory judgment on the idea of impossibility? Not in preemption sense because, I mean, Judge Casper does talk about this. She says at least there's a difference between preemption and impossible compliance now. And she does disaggregate those ideas. Couldn't you get some kind of ruling saying compliance is impossible now and that that would prevent you from being in trouble if actually faced with potential enforcement? Maybe that would work for the Attorney General but there's private enforcement also and so we would be in whack-a-mole mode of private enforcement all over. And I really question the question of impossibility. In the drug cases, right, the impossibility is based on the current federal labeling requirements and the fact that there's no obligation on the drug manufacturer to change the label. The label could change. It could adapt. It could adopt either at FDA. Right, because the label's been approved and the government says we've approved this label. But the government changes labels all the time. Parties can, based on new developments. And so the idea that there's preemption based on a collision between state labeling, state common law tort warning requirements and the label doesn't mean that that label is going to last forever. It's certainly possible that that label could be changed in a way that would eliminate that conflict. So I think this is exactly the same situation. Can we turn, it's related to that point, but to Section 3 and to the example of Subaru and Kia who no longer sell telematics-equipped cars. Why doesn't that do away with the claim as to Section 3? I think a number of reasons. First of all, the record is clear that they did that as a risk mitigation measure. I'll point the court to ACF 262, paragraph 7, and 264, pages 3 and 10. So we don't think that is really reason. But more fundamentally, it conflicts with the rationale that the Supreme Court adopted in Bartlett. In Bartlett, you couldn't sell the drug. Like, you couldn't. Like, the argument was either we comply with New Hampshire law and we can't. And so our only option was to not sell the drug. Here, the option, at least as I see it, isn't as drastic as you can't sell the drug. It's you can't sell a car where the telematics is operational. And the obstacle conflict, as I understand it, is for some of these, you say, well, if we do that, it's a safety risk that causes a recall and we can't sell the cars that are recalled. But Subaru doesn't think it requires a recall. Kia doesn't think it requires a recall. We lived a long time without telematics and no one said cars were unsafe. So where is the obstacle problem if you turn off the telematics until this is resolved? Well, we think turning off the telematics just because it's not the whole product, it's a sub-product, doesn't make Bartlett inapplicable. Bartlett... You don't have any distinction between Bartlett. You're moving Bartlett forward. A little bit, Your Honor. I think Bartlett's fundamental insight was the state was conditioning access to its markets on a judgment that was diametrically opposed to the federal judgment. And that's exactly what's happening here. Massachusetts is conditioning access to its market for this part thing that manufacturers want to offer because its judgment is diametrically opposed to what federal law requires in terms of safety. But if it doesn't require a recall to not have it, why is it some kind of safety problem governed by the MVSA? For the same reason that it's selling the drugs. The manufacturer in Bartlett didn't sell the drugs. There was no recall required. The market was closed to it. When you tell me it's obstacle preemption, the MVSA's purpose, which you're saying is being interfered with... No, this is impossibility preemption. I'm sorry to interrupt. Sorry, go ahead. This is impossibility preemption. You can't comply with both rules. Bartlett was an impossibility preemption case, right? The common law requirement for what had to be on the label was impossible for the drug manufacturer to... The MVSA says you must have telematics. It doesn't say you must have telematics. It says if you have telematics, you must comply with these safety requirements and what Massachusetts is asking you to do violates those safety requirements. In Bartlett, they didn't say recall a drug. They just said you can't sell the drug. Here, you're saying you can't sell telematics unless you violate federal law. There, they were saying you can't sell the drugs unless you violate federal law. That's the same impossibility conflict. But you're not selling telematics. We are selling telematics as part of a package. It's part of a package that attracts customers. Telematics... You're moving Bartlett forward because that's a modification of a product, not a bar to sell the product. There is some difference there. You have to modify the product. You want to sell it with this fancy special system and you can't. You have to sell it with a lesser system. But it's still a car that people can buy in Massachusetts that is safe. It's not the car that we would like to sell, just like that was the situation there. You know, in Bartlett, the Supreme Court said if we agreed with the proposition that the Court rejected, almost all of our impossibility cases would be reversed. I think what the Court is making clear is this is a pretty broad rule that basically says all the time... Now, I should say, this doesn't apply to Section 2. And I also should say, you know, with respect to Section 3, we don't think there's any line between something that a manufacturer wants to offer as an important element of a product versus the product itself. You're well over your time. You do have some time on rebuttal. Thank you, Your Honor. Thank you. Thank you, Counsel. At this time, would Counsel for the appellee please introduce herself on the record to begin? Good morning, Your Honors, and may it please the Court. Assistant Attorney General Christine Feminari on behalf of the appellee, Attorney General Campbell. The Court should affirm the decisions of the District Court below which held that the state data access law is not preempted by the Federal Motor Vehicle Safety Act, that the Plaintiff Appellant Alliance lacked associational standing to bring this claim, and that there was no need to recall witnesses under Rule 63 after this case was transferred to a successor judge. Your Honor, the District Court properly held that this case can be resolved as a matter of law. And a fundamental problem with the Alliance's argument is that they ignore the actual requirements of both the state and federal laws at issue. It is axiomatic that there cannot be preemption where there is simply no federal standard with which to comply. And here, Your Honors, there is no federal motor vehicle safety standard that governs telematics or access to mechanical repair data. We can look to the case of Freightliner from the Supreme Court, which is instructive. In that case, there was nothing in the Motor Vehicle Safety Act or its regulations that currently regulated anti-lock braking. And so the Court held there that there could not be preemption. Can I move you to this authorization, authentication argument, which I am a little troubled by it. Let's say that we're persuaded by your argument on that, or by any argument that leaves the statute open to other means of cybersecurity protection beyond authorization. Do we then remand this to the district court to sort of figure out what authentication or what other means are adequate for authentication are? No, Your Honor, I don't believe that's necessary. And I would point out, I'll answer your question, but just to point out first, that jumps the step, because that is based on the theory that the defect recall provision of the Motor Vehicle Safety Act can be preemptive. And our position is that it cannot be. But if we jump to that point and accept the alliance's theory, then no, Your Honor, there's no need to resolve that dispute, because there was unrebutted evidence at trial that there are abilities for a unaffiliated entity to administer an authorization system. The court on pages 18 of its decision went through how there are PKI, or I forget what that stands for, Your Honor, but there's PKI abilities that would allow there to be these authorization systems in place. And Your Honor, this is very common in other industries. Brian Romanski, the expert for the Attorney General, testified that internet web browsers commonly use a third party for authorization. And then the iFixit amicus brief detailed how authorization is used by third parties for electronic health records, credit reporting, and phone records. But moreover, Your Honor, there is unrebutted testimony from Greg Potter, who works for the Equipment and Tool Institute, which developed the scan tools that are used for the wired access under Section 2. And his testimony was that some OEMs, or manufacturers, allow the specific key that's needed to do authorization to be coded onto scan tools. So the tool itself is plugged in, and it recognizes the person as authorized. I think those were the factual findings I asked your colleague about earlier. So you would say those stand and are unchallenged? Yes, Your Honor. And so here, Your Honor, it's important to note that it is the plaintiff's burden to show preemption. And they haven't showed that all of their manufacturers can show that there's no set of circumstances in which it would be impossible to comply with the law. And we know from Greg Potter's testimony that there are some OEMs that use a different approach to authorization than GM and FCA. In fact, Greg Potter testified that those were the outliers, that GM requires the authorization to go back to the back office of GM, and FCA uses a secured gateway, which isn't in use by other manufacturers. So the alliance has failed to meet their burden to show that there's no set of circumstances in which it would be possible to comply with the law, including authorization, Your Honor. But if I may, I want to go back to the point. Why when? I mean, it doesn't exist now across the manufacturers, right? Currently, Your Honor, there's testimony in the record that indicates that some manufacturers don't require authorization at all, which is one option. Additionally, Your Honor, an unaffiliated entity could be used. And the record shows that unaffiliated entities for authorization are used in multiple other industries. And so all it would require. What does that mean for cars today? I mean, it can be done is what you're telling me. I mean, it can be done at some point. Yes, Your Honor, and that's the requirement for preemption. For impossibility preemption, they would have to show that compliance with both the state and federal regulations is a physical impossibility. And they failed to do that. What about their obstacle? I mean, I guess I was more taken with their obstacle argument, which is the obstacle, the goal of the statute is safety. And if we don't have this thing today, then we have to either provide, well, basically provide open access to this that we view as a safety problem. We will have to recall our cars, which means we cannot sell them. And now we're into sort of the Butler problem that we can't live up to the obligations, because we think the cars have to be recalled. And by the way, the statute puts that burden on us to figure it out. Yes, Your Honor. So for the obstacle preemption claim, the alliance has failed to identify a federal standard with which they have to comply. It's well established that courts cannot engage in a freewheeling judicial inquiry. Does it recall the standard? No, Your Honor. There's no cases that the alliance cites to where the recall or motor vehicle safety defect has been applied in the preemption context. Why wouldn't it make sense that we can't, if we do this thing that Massachusetts law requires, we who are told by Congress to make this determination, we think it's a recall. And therefore, we can't sell it. Two responses to that, Your Honor. First, the broad principle of safety and whether there is a safety defect would not be specific enough under the case law to be a federal objective for which there could be preemption. The Capone case is instructive on this. In that case, it involved au pairs, and there was an identified interest in international relations. And the court said, that's not specific enough. Here, in the Motor Vehicle Safety Act context, the cases where there is preemption analysis, like Williamson and Freightliner and GEAR, involve specific federal motor vehicle safety standards. But didn't this law place on the manufacturers, amongst other entities, the decision on whether to order a recall? No, Your Honor. It's entirely speculative whether there would be a recall. And speculation cannot ground a preemption claim. Well, if they have the statutory duty to do recalls, and then they're saying, if we have to give open access, we think that's a safety violation that would require a recall, they're making the decision Congress told them to make. I'm sorry, Your Honor, but the NHTSA determines whether there's a recall. But manufacturers also have an independent obligation to decide if there's a recall. They have an independent obligation to notify NHTSA if they think that there should be a recall. And they can agree to a voluntary recall. But NHTSA is the ultimate determinant of whether there's a motor vehicle safety defect. So they can continue to sell vehicles that a reasonable person would say have a defect, have a safety defect? No, Your Honor. Under 49 U.S.C. 30112, there's a requirement that before the manufacturers sell a vehicle, they have to certify that it's in compliance with the federal motor vehicle safety standards. Here, so no, Your Honor, they couldn't sell. But if they say, we can't certify this, because under Section 2 of Massachusetts' law, we have to give open access, which allows malign actors to interfere with cars. And therefore, we think it's not safe, and we cannot sell it. Because, Your Honor, could you repeat your question? I'm sorry. I mean, if they have an obligation, if they can't sell a car that they deem to be unsafe, and they say, OK, Massachusetts' law is requiring us to give open access to the onboard computers. And we think if we do that, that allows malign actors to have access to the computers, which creates a safety problem. We cannot sell this car, because we cannot make the certification under federal law. Why is there not an obstacle there? Because, Your Honor, as you identified, that might be a defense to a enforcement action. And as the district court judge, there might be. You can't possibly mean that they can continue to sell cars that they think are unsafe. No, Your Honor, I don't mean that. And it's important to note that the district court. Well, you just said it might be a defense. If they're unable to comply with the state law, Your Honor, and they chose not to comply, then an enforcement action would be brought. And the defense would be that they could not safely comply with the state law. So we wouldn't be having them sell unsafe cars, Your Honor. But on a preemption claim, the challenge state law must be read to avoid preemption concerns, if possible. Even if there is an equally plausible interpretation of the state law, it has to be read in a way that avoids preemption. And here, the district court found that the state law at issue could be interpreted in a way that would not result in this type of preemption violation. Your Honor, it's also important to note that under Section 3 of the law, which involves the telematics, it's undisputed there's a stipulation in the record that Subaru and Kia disabled their telematics in 2021. And the alliance stipulated both that those vehicles sold by Subaru are safe, and they do not violate any federal motor vehicle safety standards. It's also important to note that since 2021, when Subaru and Kia disabled their telematics, NHTSA has not issued a recall. So they cannot now say that this would result in a safety defect by requiring them to shut off the telematics, where there haven't been a recall in over five years. They can't be forced to shut off the telematics. Their point is, if the telematics goes, that's what's going to cause the recall. Their point is, your answer is shut it off. Their response was no Bartlett. Yes, Your Honor. That's the issue. And as Your Honor noted, Bartlett required the manufacturer withdraw from the market altogether. And it's important to note that there is. You have to define the market. Yes, Your Honor. And telematics for vehicles are an optional feature. GM's witnesses testified that not all GM vehicles need to be sold with telematics. A customer can order vehicles without telematics. That's in the appendix at 1173. I guess it all comes down to how we define a product. One way to define a product is it's a car. Another way to define a product is it's a car with all of these bells and whistles. And one bell is a telematics. And that would be an inducement for someone to buy it, because that's neat and good and helpful. And you're saying, well, you can't sell the product you want to sell. So it comes down to, was Bartlett saying, it's only you can't sell the car? Or was it saying, you can't sell this kind of car? And how do we figure that out? Well, Your Honor, the language in Bartlett is that they would have to withdraw from the market altogether. So I think withdrawing from the market altogether here would be not being able to sell vehicles. But it's also important to note that the option of disabling the telematics, no one intends for that to be the way that the manufacturers comply with Section 3. All of the experts at trial in the hot tub procedure, where they were talking to each other, they all agreed that it would be possible to create the two other options presented by the Attorney General, creating a dongle that could plug into the vehicle or changing the vehicle's architecture. They all agreed that it would take some time. But Your Honor, it's not impossible to comply with. And it's not an obstacle to any federal objective just to take some time to develop. And it's important to note that... Let me ask you a question about that, going back to Judge Montecalvo's point about our camp mediation program. So why is the case here? Yes, Your Honor, if you look back through the record, Aaron Lowe, who worked for the Auto Care Association, which represents the aftermarket, submitted an affidavit and some exhibits. That organization has been providing offers to the alliance to figure out a way to comply with the law and to establish the unaffiliated entity. Since the law was passed and beforehand, the record includes presentations that they gave to the alliance about how they could comply. And the alliance, both at trial and... What's the Attorney General's view about working cooperatively? The Attorney General's view... Certainly, Your Honor. Our view is that if there were an opportunity to settle or resolve this case, of course we would be open to it. But we're not vehicle experts. Our experts that we put out at trial were. I see my time has expired. Please continue. And so this argument from the other side that they don't know what we're talking about is, you know, it's hard to take seriously because we put on an entire trial in which our experts explained the ways in which you could comply. And so if there were a way... The next step in that would be putting courts and... You say this is how it can be done. The other side, in good faith, says, Okay, that's interesting. Let's meet and see if we can do what you're saying can be done because we have certain expertise, you have certain expertise. Let's work together to achieve the goal. That would be what would happen if you didn't have courts in preemption. Why has that not happened? Because that would be the best for everyone. So why has that not happened? Your Honor, the manufacturer's positions have been that they cannot comply with the law as written. And the testimony at trial, as well as the affidavit submitted... Your friend did not say that today. Was that the first time you'd ever heard that today? The way he spoke to us? He didn't say, when he stood up here and he got these questions, This is impossible. We can never do it. There's no point in talking. That's not what he said. Was that the first time you'd ever heard that from him or people he represents? As he mentioned, they did send a letter asking to discuss. But from our position, it was not appropriate to discuss because the case was pending. Additionally, there were disputes about how the law could be interpreted. But GM testified... Taking that, and back to what Judge Montecavo said earlier, we have a whole system here where we help people talk. So if they wrote you a letter that you'd like to talk, and you're saying, we'd like to talk, and the only impediment is we're in litigation, and we're saying we can offer you a system within the courts to talk, why would you be opposed to that? That's not the only impediment, Your Honor. The impediment is that the manufacturers, such as GM, have chosen to interpret the law in a way that is overly broad, even with the judges limiting construction. And so all of their positions... Is that precisely? I'm sorry, Your Honor? Is that precisely that's overbroad that they say? Certainly, Your Honor. So at trial, the GM witnesses said that they had to interpret the law in the broadest way possible, that it would have to require anyone to have access to the inside of the vehicle? They're saying now that they don't dispute Judge Casper's construction of the statute. I heard your friend say that at the podium. So it seems like if we had this conversation, they've conceded and agree it's the way Judge Casper construed the statute, that's what it's going to mean, and now we're talking about within those parameters, can it be done? It seems like they wrote you a letter that you say you'd be open to. Your Honor, the Attorney General is involved in the case to defend the ballot initiative and for the preemption claim. And so if they admit that it can be done under Judge Casper's interpretation, then there is no preemption claim. Let me ask the question a different way. Taking for granted that there are parties perhaps not here today, and there are non-parties who are certainly not here today, do the parties represented here want us to put a pause on this so that you can confer and let us know whether you want this to be sent to settlement? Or is your position that you need an answer on the questions that are raised? You don't have to answer that. You don't have to answer me. I just want, you know, you can take some time. But if you're saying we don't need the time, we want this case decided, that's fine too. That's your prerogative. I believe our position, Your Honor, is that we'd like this case decided. But if you'd like, I can confer with counsel for the other side afterwards. And if there is an update, we could provide an update to the court. Well, it's your choice. Thank you. I think that would make sense to do. All right. I see I'm over time. Thank you, Your Honors. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record for a three-minute rebuttal? Andrew Pincus for appellant. I'm sorry to do this to you, but Bartlett keeps rattling around in my head. So if Massachusetts passed a law or regulation saying no more red cars could be sold in the state because people think they're fire engines, for example, we would have this question. Is a red car the product or are cars the product? So is there some source other than Bartlett that can tell us what the product is that we're dealing with? I don't think there is, Your Honor. I think the problem with the red car example is If you look at Bartlett, just to build on Judge Howard's question, maybe there's other law out there that has expanded on Bartlett since 2013, but the words in Bartlett are leave the market altogether. The court keeps putting these words that seem to suggest it's not modification of the product. It's the product sort of in a bigger sense can't be sold. So the red car wouldn't be leaving altogether. It would be change the color. I think that they talked about the product in Bartlett because it was an on-off switch for the entire product. If you couldn't comply with federal labeling, you couldn't sell the product. The product, because the labeling applied to the whole product. Here, the part of the car where there's a conflict is the telematics. And I think the difference from the red car example is that Massachusetts is conditioning access to its market on something, on a requirement that violates federal law. There's no federal law requirement that I know of that says you have to have red cars. There's no requirement that you have telematics. I think it might be, for example, that a law that just banned telematics because it was unhealthy would be a different situation. I think the critical thing here is the conflict between the state and federal, particular conflict between the state and federal judgments. I think that's what the court was getting at. Does NHTSA say anything about a vehicle without telematics? NHTSA twice says, both in its June letter and in its August letter, that telematics is a very important safety feature and manufacturers should think long and hard before disabling it. They have not said that disabling telematics would create a defect. They have not said that. Just to address Your Honors Judge Howard's last question, I think the critical question is everyone agrees now that the law has been interpreted that it's possible, but it's not possible now to comply because the entities don't exist for our part. We would be pleased to participate in a discussion that included the Attorney General and NHTSA and the other interested parties, the aftermarket repairers, to try and work this out in a way that's possible. That's what we said in ECF 368 in response to the August exchange of letters, and we never got a response. Just to answer some of the court's other questions, on the scan tool question, it's clear that there are authorization limits on what that scan tool that my friend referred to can do. I point the court to Joint Appendix 680 to 81, paragraph 84 to 87, and Joint Appendix 1229. On this question, we didn't talk much about the differences between Section 2 and Section 3. We think NHTSA's rationale makes clear that Section 2 has the same problem as Section 3, although they only address Section 3 in their June letter. If the court has any questions about that, I urge them to ask NHTSA to file a brief to clarify it. Your time is up. I think I would just ask the parties to confer, as they've both represented they will do, and then to circle back to the court, I would say, within the next three to four weeks. I understand you have other people you need to talk to, but we would like to hear from you sooner rather than later whether you wish to embark on a referral to camp. Can I make one other point in response to Judge Howard's question? Quickly. I'm sorry. You asked about enforcement. After Subaru made its announcement, ECF 262 and 264 shows that the Attorney General followed up to see whether Subaru was indeed disabling telematics, so there is enforcement. Thank you. Thank you, Counsel. That concludes argument in this case.